**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

In re Ascena Retail Group, Inc. Securities
Litigation

No. 2:19-cv-13529-KM-JBC

**REPLY MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS PLAINTIFFS'
CONSOLIDATED AMENDED COMPLAINT**

WEIL, GOTSHAL & MANGES LLP

767 Fifth Avenue
New York, NY 10153
(212) 310-8000

*Attorneys for Defendants Ascena Retail
Group, Inc., David Jaffe, and Robert
Giammatteo*

July 3, 2020

## <u>TABLE OF CONTENTS</u>

**Page**

Preliminary Statement ......................................................................................................1

Argument ...........................................................................................................................3

I.     Plaintiffs' Claims Are Time-Barred ..........................................................................3

II.    Plaintiffs Fail to State a Section 10(b) Claim ...........................................................5

       A.    Plaintiffs Fail to Plead Any False or Misleading Statement ....................5

       B.    Plaintiffs Fail to Plead Scienter....................................................................9

             1.    Scienter Allegations Must be "at least As Compelling As Any Opposing Inference of Nonfraudulent Intent" Under Tellabs ...................9

             2.    Ascena's Public Statement Do Not Allege Fraud......................................10

             3.    Plaintiffs' Remaining Theories of Scienter do not Support Their Claim ................................................................................................13

       C.    Plaintiffs Fail to Plead Loss Causation .....................................................14

       D.    The Claims Against the Individual Defendants Should be Dismissed ................16

Conclusion .......................................................................................................................17

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Benak v. All. Capital Mgmt. L.P.*,
  349 F. Supp. 2d 882 (D.N.J. 2004), *aff'd*, 435 F.3d 396 (3d Cir. 2006)....................................4

*In re Bradley Pharm., Inc. Sec. Litig.*,
  421 F. Supp. 2d 822 (D.N.J. 2006) ......................................................................................15

*Carpenters Health & Welfare Fund v. Coca-Cola Co.*,
  321 F. Supp. 2d 1342 (N.D. Ga. 2004) ...............................................................................12

*Christian v. BT Grp. PLC*,
  2020 WL 1969941 (D.N.J. Apr. 24, 2020), *appeal filed sub nom. PAMCAH-
  AU Local 675 Pension Fund v. BT Grp. PLC*, No. 20-2106 (3d Cir. June 2,
  2020) ....................................................................................................................................10

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
  856 F.3d 605 (9th Cir. 2017) .................................................................................................5

*City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*,
  679 F.3d 64 (2d Cir. 2012)............................................................................................ *passim*

*City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*,
  2010 WL 1029290 (S.D.N.Y. Mar. 16, 2010), *aff'd*, 679 F.3d 64 (2d Cir.
  2012) ....................................................................................................................................15

*City of Omaha v. CBS Corp.*,
  2011 U.S. Dist. Lexis 57647 (S.D.N.Y. May 24, 2011), *aff'd*, 679 F.3d 64 (2d
  Cir. 2012) ...............................................................................................................................9

*City of Sterling Heights Police & Fire Ret. Sys. v. Vodafone Group Pub. Ltd. Co.*,
  655 F. Supp. 2d 262 (S.D.N.Y. 2009)................................................................................8, 9

*In re Datatec Sys., Inc. Sec. Litig.*,
  2006 WL 3095951 (D.N.J. Oct. 30, 2006).............................................................................9

*Davidco Inv'rs, LLC v. Anchor Glass Container Corp.*,
  2006 WL 547989 (M.D. Fla. Mar. 6, 2006) .......................................................................12

*De Vito v. Liquid Holdings Grp., Inc.*,
  2018 WL 6891832 (D.N.J. Dec. 31, 2018)..................................................................4, 5, 15

*Dudley v. Haub*,
    2013 WL 1845519 (D.N.J. Apr. 30, 2013) ...................................................7, 11, 13

*In re Exxon Mobil Corp. Sec. Litig.*,
    387 F. Supp. 2d 407 (D.N.J. 2005), *aff'd*, 500 F.3d 189 (3d Cir. 2007)....................................9

*Fait v. Regions Fin. Corp.*,
    655 F.3d 105 (2d Cir. 2011).......................................................................6

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    352 F. Supp. 2d 429 (S.D.N.Y. 2005)...........................................................7, 12

*GSC Partners CDO Fund v. Washington*,
    368 F.3d 228 (3d Cir. 2004)........................................................................4

*Hull v. Glob. Digital Sols., Inc.*,
    2017 WL 6493148 (D.N.J. Dec. 19, 2017) .....................................................5

*In re Intelligroup Sec. Litig.*,
    527 F. Supp. 2d 262 (D.N.J. 2007) ............................................................11

*In re Leapfrog Enters. Inc. Sec. Litig.*,
    237 F. Supp. 3d 943 (N.D. Cal. 2017) .......................................................8, 12

*McCabe v. Ernst & Young, LLP*,
    494 F.3d 418 (3d Cir. 2007).................................................................14, 15

*Merck & Co. v. Reynolds*,
    559 U.S. 633 (2010)................................................................................5

*Monk v. Johnson & Johnson*,
    2011 WL 6339824 (D.N.J. Dec. 19, 2011) ................................................16, 17

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002)..............................................................4, 5, 17

*Omanoff v. Patrizio & Zhao LLC*,
    2015 U.S. Dist. LEXIS 43086 (D.N.J. Mar. 31, 2015).......................................5, 15

*Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    575 U.S. 175 (2015)............................................................................2, 6

*In re Omnicom Grp., Inc. Sec. Litig.*,
    2005 WL 735937 (S.D.N.Y. Mar. 30, 2005) ...............................................11, 12

*In re Par Pharm. Sec. Litig.*,
    2008 WL 2559362 (D.N.J., June 24, 2008) .....................................................9

*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*,
  836 F.2d 173 (3d Cir. 1988)........................................................................3

*In re Radian Sec. Litig.*,
  612 F. Supp. 2d 594 (E.D. Pa. 2009) .......................................................12

*Rahman v. Kid Brands, Inc.*,
  736 F.3d 237 (3d Cir. 2013)................................................................13, 17

*Rosen v. Textron, Inc.*,
  321 F. Supp. 2d 308 (D.R.I. 2004)..............................................................9

*In re Synchronoss Techs., Inc. Sec. Litig.*,
  2019 WL 2849933 (D.N.J. July 2, 2019)..................................................11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007)............................................................................2, 9, 10

*Thor Power Tool Co. v. Comm'r*,
  439 U.S. 522 (1979)....................................................................................7

*In re Vivendi Universal, S.A. Sec. Litig.*,
  381 F. Supp. 2d 158 (S.D.N.Y. 2003)......................................................13

*Wiest v. Lynch*,
  710 F.3d 121 (3d Cir. 2013)........................................................................9

*Winer Family Tr. v. Queen*,
  503 F.3d 319 (3d Cir. 2007)......................................................................16

*Zwick Partners, L.P. v. Quorum Health Corp.*,
  2018 WL 2933406 (M.D. Tenn. Apr. 19, 2018)......................7, 8, 12, 15, 16

**Statutes**

28 U.S.C § 1658............................................................................................3

Defendants respectfully submit this reply memorandum of law in support of their Motion to Dismiss Plaintiffs' Consolidated Amended Complaint ("MTD") (ECF No. 47).[1]

**<u>Preliminary Statement</u>**

Plaintiffs' opposition confirms what defendants showed in their moving brief: plaintiffs plead only their own rear-view mirror disagreement with the timing of Ascena's accounting judgment concerning a write down of goodwill in a challenging environment for retailers. There is no viable theory of fraud, and the complaint fails on no fewer than four independent grounds.

First, plaintiffs' claims are time-barred by the applicable two-year statute of limitations. By plaintiffs' own admission in their pleading, the period began to run on May 17, 2017 (the last day of the putative class period), when plaintiffs allege the "truth" was fully and finally revealed concerning Ascena's goodwill impairment. Plaintiffs filed their complaint on June 7, 2019, more than two years later. Given this insurmountable bar to their claims, plaintiffs now switch course and argue that the time period begins on June 8, 2017, when they now claim to have discovered the facts indicating "*all elements* under section 10(b)." Opp. at 29. But this is not what the complaint alleges, and it is black-letter law that plaintiffs cannot amend their complaint through their opposition. Further, plaintiffs cannot have it both ways: (i) asserting that all the elements of their Section 10(b) claim (including loss causation) are fully pled within the current class period (which ends on May 17), but then (ii) sidestep the statute of limitations, asserting that the alleged fraud was only revealed in June. *See* Section I below.

Second, plaintiffs fail to convert an accounting judgment on the timing of an impairment charge into a false or misleading statement. Plaintiffs concede that Ascena's goodwill accounting

---

[1] Capitalized terms used but not defined herein have the same meaning as in defendants' opening brief.

valuations are "opinions" that "tolerate a range of reasonable treatments" (Opp. at 17-18), but they fail to plead a single fact showing that defendants disbelieved their goodwill reporting or omitted facts that would undermine their opinions, as required by *Omnicare*. Indeed, far from describing omitted contrary facts, plaintiffs agree that Ascena's contemporaneous quarterly disclosures during the putative class period "revealed a steady drumbeat of deteriorating performance, comparable store sales declines, negative trends, and downwardly revised guidance." Opp. at 7. As plaintiffs' opposition makes clear, the complaint rests solely on a long-rejected fraud-by-hindsight allegation that because Ascena took an impairment charge post-class period, it was fraudulent not to have done so earlier. There is not a shred of a particularized allegation or any confidential witness to support plaintiffs' fraud-by-hindsight complaint. *See* Section II below.

Third, plaintiffs fail to clear the high hurdle of alleging scienter under *Tellabs*. There is no theory of fraud, much less a cogent and compelling one. Plaintiffs' opposition leaves unanswered the central question underpinning any theory of securities fraud: who benefits from the alleged fraud, and for what purpose? Plaintiffs have no explanation why Ascena would knowingly buy a company (ANN Inc.) purportedly overvalued by $1 billion, incur "a level of debt unprecedented for the Company," contemporaneously disclose its growing struggles each quarter, and then wait over a year to write down goodwill. Plaintiffs merely rehash the complaint's discredited scienter theories without addressing the bedrock authority that forecloses them. *See* Section III below.

Fourth, the complaint fails to plead loss causation. Plaintiffs have no answer to defendants' showing that Ascena's stock price on May 17, 2017 already reflected the information underlying any supposed need for an impairment charge. The Second Circuit addressed this precise issue in *City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*, affirming dismissal of a complaint for failure to adequately plead reliance on a fraudulently inflated price where, as here, all

impairment indicators "were matters of public knowledge" leading up to the announcement of a goodwill write down. 679 F.3d 64, 69 (2d Cir. 2012). *See* Section IV below.

**Argument**

**I.     Plaintiffs' Claims Are Time-Barred**

Defendants showed that plaintiffs' claims are time-barred because plaintiffs filed this case more than two years after they should have discovered the alleged facts underlying their claims. MTD at 14; *see* 28 U.S.C § 1658(b). In response, plaintiffs argue that they could not have discovered facts to plead "*all elements* under section 10(b)," including scienter, until Ascena's June 8, 2017 disclosure. Opp. at 29. This newly-minted assertion runs headfirst into a barrage of problems of plaintiffs' own making.

First, that is not what the complaint says. The complaint flat-out states that the class period ends on May 17, 2017, "[w]hen [d]efendants' prior misrepresentations and fraudulent conduct were disclosed and became apparent to the market, [and] the price of Ascena common stock fell precipitously." AC ¶ 134. May 17, 2017 is when defendants for the "first time…finally acknowledged that they had been ignoring all the warning signs indicating that Ascena's goodwill" was impaired. AC ¶ 115. And the 26% "precipitous decline" in Ascena's stock price that followed this announcement is, according to plaintiffs, the "direct result of the nature and extent of [d]efendants' fraud finally being revealed to investors and the market." AC ¶¶ 118, 136.

Thus, on the face of the complaint, plaintiffs allege that all elements of their claim were fully known on May 17, not June 8. Plaintiffs cannot amend their complaint through their opposition. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

3

Second, plaintiffs' argument cannot be squared with controlling precedent. The parties agree on the relevant standard: the clock does not begin to run until a plaintiff can plead "all elements under section 10(b)." *See* MTD at 15; Opp. at 29. But plaintiffs ignore this Court's instruction that, in applying that standard, "[p]laintiffs need not know all of the details or narrow aspects of the alleged fraud to trigger the limitations period; instead, the period begins to run from the time at which plaintiff should have discovered the general fraudulent scheme." *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1326 (3d Cir. 2002) (cited by *De Vito v. Liquid Holdings Grp., Inc.*, 2018 WL 6891832, at *26 (D.N.J. Dec. 31, 2018) (McNulty, J.)); *Benak v. All. Capital Mgmt. L.P.*, 349 F. Supp. 2d 882, 890 (D.N.J. 2004) (even "information [that] may be highly relevant to plaintiffs' claims" "has little bearing on the inquiry notice analysis" unless it is "necessary" to establish the "general fraudulent scheme"), *aff'd*, 435 F.3d 396 (3d Cir. 2006). Here, plaintiffs attempt to plead scienter on multiple grounds, all of which are alleged to have been publicly known well before June 8—including, most significantly, that defendants' *public disclosures* during the class period show that they knew facts "underlying the Company's impairment charge." AC ¶¶ 123-24. On the face of their complaint, plaintiffs were well aware of all elements of their claim—including scienter—long before May 17, thereby triggering the statute of limitations clock.[2]

Further, the only new information disclosed on June 8, 2017 was the *amount* of the impairment charge, which plaintiffs warned on May 17 would be "material" (AC ¶ 114), and, in any event, is not alone indicative of scienter under well-settled law. *See GSC Partners CDO Fund*

---

[2] Plaintiffs' generalized scienter allegations concerning Ascena's internal reporting practices, defendants' sophistication, and Mr. Jaffe's alleged filial piety are not cognizable (*see* Section II.B below) and plaintiffs do not allege that they discovered these facts after May 17, 2017.

*v. Washington*, 368 F.3d 228, 243 (3d Cir. 2004).[3] Plaintiffs' reliance on Mr. Giammatteo's statement on June 8 that the company had seen "a significant change in the market environment…over the past couple of years" (Opp. at 22-23) fares no better. This information was not new (Ascena had disclosed these developments each quarter), and certainly not "necessary" to "discover[] the general fraudulent scheme." *In re NAHC*, 306 F.3d at 1326.

Third, plaintiffs' cited authority undercuts their position. In *Merck*, *Omanoff*, and *Hull* (*see* Opp. at 29), the *sole facts* demonstrating scienter were not revealed until after the date that defendants had argued the clock started to run. *See Merck & Co. v. Reynolds*, 559 U.S. 633, 653-54 (2010) (the statute of limitations was not triggered at the time of the FDA warning letter because the letter "show[ed] little or nothing about the here-relevant scienter"); *Hull v. Glob. Digital Sols., Inc.*, 2017 WL 6493148, at *10 (D.N.J. Dec. 19, 2017) (the company's 10-K did not trigger the limitations period because "the probative discoverable facts regarding [d]efendants' scienter or motive were not made obvious by the 10-K"); *Omanoff v. Patrizio & Zhao LLC*, 2015 U.S. Dist. LEXIS 43086, at *17-18 (D.N.J. Mar. 31, 2015) (the facts sufficient to plead scienter were revealed by the SEC Action disclosed on September 30, 2013; after defendants' proposed trigger date).

As this Court has held, the purpose of the statute of limitations is to "promote justice by preventing surprises through [plaintiffs'] revival of claims that have been allowed to slumber." *De Vito*, 2018 WL 6891832, at *18. Plaintiff's claim is time-barred and should be dismissed.

## II.      Plaintiffs Fail to State a Section 10(b) Claim

### A.      Plaintiffs Fail to Plead Any False or Misleading Statement

Plaintiffs' opposition confirms their failure to plead that Ascena's statements were false.

---

[3] *See also City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 622 (9th Cir. 2017) ("The magnitude of a write down plays a 'minor role in the scienter analysis.'").

*First*, plaintiffs affirmatively concede that Ascena's statements regarding its goodwill estimates are paradigmatic statements of opinion that "tolerate a range of 'reasonable' treatments" and that deciding when to conduct interim impairment testing is a matter of judgment. Opp. at 17-19. Plaintiffs also concede that defendants' opinions are only actionable "if they do not reflect the speaker's subjective belief (*i.e.*, the speaker does not 'actually hold[] the stated belief'), *or* they omit known material information undermining that belief." Opp. at 18 (citing *Omnicare v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 183-92 (2015)).

Here, plaintiffs fail to plead a single fact showing that defendants subjectively disbelieved their goodwill reporting—no confidential witness allegation, no internal document, no admission. Plaintiffs' argument that "most of the impairment indicators identified under GAAP were triggered [during the class period]…is overwhelming evidence that [d]efendants knew that Ascena's goodwill [] [was] 'more than likely' impaired" (Opp. at 23) does not remotely suffice. *See Fait v. Regions Fin. Corp.*, 655 F.3d 105, 112 (2d Cir. 2011) (plaintiff's reliance "on allegations about adverse market conditions to support the contention that defendants should have reached different conclusions about the amount of and the need to test for goodwill" failed to "plausibly allege that defendants did not believe the statements regarding goodwill at the time they made them"); *CBS*, 679 F.3d at 67-69 (extending *Fait* to Section 10(b) and 20(a) claims).

Similarly, plaintiffs do not point to a single undisclosed fact that defendants omitted that would "undermine" their opinions about Ascena's goodwill. Indeed, plaintiffs expressly concede that *all* of the information that purportedly undermined defendants' opinion was fully disclosed each quarter. According to plaintiffs, "the gravamen of the [c]omplaint is that [d]efendants…could not have actually believed" their opinion because "the [c]omplaint alleges contemporaneous events and circumstances in each relevant quarter showing that ANN's goodwill and intangible assets

were already impaired." Opp. at 2, 15.[4] These "contemporaneous events" that supposedly undermined defendants' opinion—which the opposition groups into four "impairment indicators"—were *public*. *See* Opp. at 7-10[5] (citing quarterly filings, earnings calls, stock price, etc.). Plaintiffs describe a company whose "disclosures revealed a steady drumbeat of deteriorating performance, comparable store sales declines, negative trends, and downwardly revised guidance," (Opp. at 7), not one that misled investors by omitting information contrary to their opinions.[6]

Plaintiffs' cited authority (Opp. at 19) is notably inapposite. Unlike here, the plaintiffs in *Dudley* presented statements from confidential witnesses that the senior management of A&P, including the CEO, knew A&P's operational and financial conditions were rapidly deteriorating and that the company was burning through cash at a faster rate than disclosed—directly contrary to A&P's public statement that it could withstand a "decrease in fair value of over 25%" before a goodwill charge would be necessary. *Dudley v. Haub*, 2013 WL 1845519, at *4, *5, n.2 (D.N.J. Apr. 30, 2013). In *Zwick*, the court found that defendants should have conducted an interim impairment test in Q1 2016, a quarter after its Q4 2015 annual test, because defendants experienced worsening financial results during that quarter. *Zwick Partners, L.P. v. Quorum Health Corp.*,

---

[4] *See also* Opp. at 6 ("triggering events occurred, alerting [d]efendants that the goodwill and trade names of Ascena and ANN were significantly impaired"); Opp. at 16 ("Plaintiffs allege impairment indicators that existed during the period they allege the impairment should have been recognized.").

[5] *See* AC ¶¶ 53, 54, 62, 68, 73, 75, 85, 87, 89, 91, 92, 104, 106, 112, 113, 114, 116, 123, 124.

[6] Plaintiffs' conclusory assertion that Ascena's "belated write down [] did not fall within a range of reasonable treatments" based on inapposite precedent does nothing to stave off dismissal. Opp. at 18, (*citing Thor Power Tool Co. v. Comm'r*, 439 U.S. 522 (1979); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429 (S.D.N.Y. 2005)). Neither case concerned GAAP standards in the context of goodwill accounting—and in *Thor*, the Court specifically cautioned that GAAP is "far from being a canonical set of rules that will ensure identical accounting treatment of identical transactions," whereas "variances" "are questionable in a tax system designed to ensure as far as possible that similarly situated taxpayers pay the same tax." *Thor*, 439 U.S. at 544.

2018 WL 2933406, at *6 (M.D. Tenn. Apr. 19, 2018). Here, unlike in *Zwick*, Ascena did not experience "unprecedented secular change" until three quarters after its annual test, in 3Q 2017, when it was forced to cut its FY17 earnings guidance by 73%. This dramatic reduction, along with other recent declines in stock price and performance, prompted Ascena to conduct an interim goodwill impairment test *that same quarter*. *See* MTD at 10.[7]

       *Second*, plaintiffs' sole response to defendants' fraud-by-hindsight argument (MTD at 17-22) is to reflexively assert that they are not "second-guessing in hindsight" Ascena's judgment because the complaint "details the circumstances in each quarter showing that ANN's goodwill and trade names were impaired." Opp. at 24. Not so. Plaintiffs never allege with specificity when and exactly why Ascena should have taken the impairment charge before May 17, 2017. Generalizations that "most of the impairment indicators identified under GAAP were triggered" before May 2017 (Opp. at 23),[8] without specifying exactly which indicators were triggered and when, does not meet the particularity requirements of the PSLRA. *See City of Sterling Heights Police & Fire Ret. Sys. v. Vodafone Group Pub. Ltd. Co.*, 655 F. Supp. 2d 262, 269-70 (S.D.N.Y. 2009) (dismissing complaint because plaintiff failed to allege a discernible point in time when

---

[7] Plaintiffs' reliance on *Leapfrog* is similarly misplaced. There, the Court found that the significant stock decline that defendants claimed prompted their long-lived asset impairment charge "had primarily taken place" earlier, triggering the need to conduct the test earlier. *In re Leapfrog Enters. Inc. Sec. Litig.*, 237 F. Supp. 3d 943, 955 (N.D. Cal. 2017).

[8] Plaintiffs assert that defendants "ignor[e] the $566.3 million charge to ANN's trade names." Opp. at 13 n.14. That is because plaintiffs were silent on this issue in the complaint. Although plaintiffs tack on a reference to "indefinite intangible assets" at the end of their discussions about goodwill, their claim is all about ANN's goodwill. *See* Opp. at 23 ("GAAP required Defendants to test for ***goodwill impairment*** if any triggering event, alone or in combination, made it more likely than not an impairment existed."). In any event, plaintiffs never discuss the impairment factors for trade name impairment (other than noting the GAAP standard) and plead no facts demonstrating why ANN's trade names were impaired earlier than June 8, 2017 as a result of any factor.

defendants should have taken impairment charge).[9]

*Third*, plaintiffs' opposition avoids entirely the long line of unbroken authority in the Third Circuit that GAAP violations, without more, are insufficient to plead a Section 10(b) claim. *See generally Wiest v. Lynch*, 710 F.3d 121, 143-44 (3d Cir. 2013); *In re Exxon Mobil Corp. Sec. Litig.*, 387 F. Supp. 2d 407, 426 (D.N.J. 2005), *aff'd*, 500 F.3d 189 (3d Cir. 2007); *In re Par Pharm. Sec. Litig.*, 2008 WL 2559362, at *13 (D.N.J. June 24, 2008); *In re Datatec Sys., Inc. Sec. Litig.*, 2006 WL 3095951, at *12 (D.N.J. Oct. 30, 2006).

It is black-letter law that a plaintiff's rear-view disagreement about a company's accounting judgment does not suffice to state a claim under Section 10(b). *See* MTD at 18, 21-22.

### B.    Plaintiffs Fail to Plead Scienter

Defendants also showed that plaintiffs' allegations do not support any inference (much less the requisite strong inference) of scienter. *See* MTD at 22. Plaintiffs offer no meaningful rejoinder.

#### 1.    Scienter Allegations Must be "at least As Compelling As Any Opposing Inference of Nonfraudulent Intent" Under *Tellabs*.

*Tellabs* requires dismissal unless the particularized allegations considered "holistically" support a "strong" and "cogent" inference of scienter that is "at least as compelling as any opposing

---

[9] *See also Rosen v. Textron, Inc.*, 321 F. Supp. 2d 308, 326-27 (D.R.I. 2004) (same). Plaintiffs do not distinguish *Nat'l Junior Baseball League* and *City of Sterling Heights* (*see* MTD at 19, 21), other than to falsely assert that they "have alleged how much earlier Ascena should have recorded the impairment charge, the amount of such charge, and the triggering events justifying the impairment testing and charge" (*see* Opp. at 20). But those specifics are notably absent from their complaint. Plaintiffs' attempt to distinguish *CBS* is similarly unavailing. Opp. at n.20. In both *CBS* and here, plaintiffs allege that the company's contemporaneous class period disclosures revealed that defendants knew that earlier testing would have resulted in an impairment. *City of Omaha v. CBS Corp.*, 2011 U.S. Dist. Lexis 57647, at *6-7 (S.D.N.Y. May 24, 2011), *aff'd*, 679 F.3d 64 (2d Cir. 2012). Plaintiffs' assertion that the Second Circuit's reasoning does not apply because Ascena took a bigger write-down than CBS (Opp. at n.20) is both legally irrelevant and factually wrong. *Compare CBS*, 2011 U.S. Dist. Lexis 57647, at *5 (CBS's $14 billion impairment charge) *with* AC ¶ 119 (Ascena's $1.3 billion impairment charge).

inference of nonfraudulent intent." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314, 319, 325-26 (2007). It is not merely, as plaintiffs contend, "sufficient if the inference is one that is '*at least as likely as* any plausible opposing inference.'" Opp. at 21. Moreover, "[o]missions and ambiguities 'count against inferring scienter.'" *Christian v. BT Grp. PLC*, 2020 WL 1969941, at *3 (D.N.J. Apr. 24, 2020) (McNulty, J.) (citing *Tellabs*, 551 U.S. at 326), *appeal filed sub nom. PAMCAH-AU Local 675 Pension Fund v. BT Grp. PLC*, No. 20-2106 (3d Cir. June 2, 2020).

Plaintiffs never engage in the required *Tellabs* analysis and offer no competing overall theory of fraud at least as cogent and compelling as the non-fraudulent theory. After reading plaintiffs' opposition, one is still left to wonder why Ascena would knowingly buy a company purportedly overvalued by $1 billion dollars, incur "a level of debt unprecedented for the Company," (AC ¶ 38) contemporaneously disclose negative performance each quarter, and then wait over a year to write down goodwill. There are no confidential witnesses, no allegations of insider trading, and no allegations of misconduct. Plaintiffs completely ignore the non-fraudulent, far more compelling inference—that defendants disclosed the negative trends Ascena was experiencing and, as defendants warned might happen, conducted interim impairment testing once those trends, in defendants' judgment, made it more likely than not that goodwill was impaired.

It is obvious why plaintiffs avoid the *Tellabs* analysis—they say nothing more than because there was an impairment, there must have been fraud. This is not enough.

### 2.    Ascena's Public Statement Do Not Allege Fraud.

In response to defendants' showing that Ascena's public disclosures do not demonstrate scienter (MTD at 22-24), plaintiffs (i) regurgitate their theory that because Ascena's public statements reflect "knowledge of triggering events," defendants must also have reached the conclusion that "an impairment was 'more likely than not'" (Opp. at 21), and (ii) mischaracterize Mr. Giammatteo's post-class period statement attributing the impairment charge to a "significant

change in the market environment we've seen over the past *couple of years*'" as some form of admission (Opp. at 22-23). This merely rehashes allegations of the complaint—it does nothing to respond to defendants' motion.

*First*, for the reasons defendants already explained (and plaintiffs do not address), Mr. Giammatteo's statement reiterating exactly what Ascena disclosed every quarter in no way pleads facts demonstrating that defendants knew during the entire class period that goodwill was impaired. *See* MTD at 23.

*Second*, plaintiffs' suggestion that allegations of "red flags" alone can establish scienter runs contrary to controlling precedent. Opp. at 21-24. "[C]ourts have uniformly held that allegations of scienter based on GAAP violations do not create the requisite strong inference of scienter unless the plaintiff's complaint alleges 'more'." *In re Synchronoss Techs., Inc. Sec. Litig.*, 2019 WL 2849933, at *11 (D.N.J. July 2, 2019). It is not enough to merely plead, as plaintiffs do, that the red flags were "ignored"—the complaint must also plead "that defendants had clear reasons to doubt the validity of the issuer's financials but, nonetheless, kept turning a blind eye to all such factual 'red flags.'" *In re Intelligroup Sec. Litig.*, 527 F. Supp. 2d 262, 287 (D.N.J. 2007). Here, there are no such contemporaneous facts alleged.

Plaintiffs' assertion that "[c]ourts have sustained impairment claims and found scienter adequately pleaded based on allegations similar to those asserted here," (Opp. at 23), is wrong. Plaintiffs do not cite a single case where a complaint containing no theory of fraud, but alleging "red flags" alone, survived a motion to dismiss. The cases cited by plaintiffs are all plainly distinguishable and only highlight the glaring deficiencies in this complaint. For example, plaintiffs in *Dudley* pleaded a particularized fraudulent motive, supported by confidential witnesses. *See Dudley*, 2013 WL 1845519, at *11-12. Plaintiffs in *Omnicom* successfully

"couple[d] the GAAP violations with allegations of fraudulent intent" by alleging when write-downs should have been taken and that defendants transferred certain assets to another entity for the entire purpose of avoiding an impairment charge. *In re Omnicom Grp., Inc. Sec. Litig.*, 2005 WL 735937, at *9, *14 (S.D.N.Y. Mar. 30, 2005). And plaintiffs in *Carpenters* alleged a fraudulent scheme supported by statements from high-level former employees. *Carpenters Health & Welfare Fund v. Coca-Cola Co.*, 321 F. Supp. 2d 1342, 1352-53 (N.D. Ga. 2004).

*Third*, even assuming that a goodwill impairment charge should have been recorded earlier—which plaintiffs do not adequately plead—there are no allegations as to why this failure "involved not merely simple, or even inexcusable negligence, but an extreme departure from the range of reasonable business treatments permitted under GAAP." *In re Radian Sec. Litig.*, 612 F. Supp. 2d 594, 615 (E.D. Pa. 2009). Plaintiffs make no effort to address this in their opposition. And plaintiffs' cited cases illustrate that a complaint can survive *only* where there are particularized facts connecting the accounting violations to allegations of fraudulent intent—which plaintiffs entirely fail to plead here. [10]

---

[10] *See, e.g.*, *Zwick*, 2018 WL 2933406, at *10 (particularized motive that defendants delayed taking impairment until after spinning off company in order to make company more appealing to investors and obtain more financing to fund the spin-off and pay off its debt); *Leapfrog*, 237 F. Supp. 3d at 950-53 (finding scienter adequately pleaded for failure to write down impairment of intangible assets but inadequately pleaded for failure to write down goodwill where company had reason to be optimistic and disclosed potential need for goodwill impairment test with specificity); *In re Flag*, 352 F. Supp. 2d at 442, 465-66 (in an earnings restatement case, failure to take impairment of long-lived assets supported inference of scienter where management revealed that the company consistently missed sales targets by 80-90%, allegations were bolstered by confidential witnesses, complaint identified when charge should have been taken, and there was a nearly $2 billion discrepancy in the estimated value of those assets between company's quarterly SEC filing and later bankruptcy filing); *Davidco Inv'rs, LLC v. Anchor Glass Container Corp.*, 2006 WL 547989, at *20-21 (M.D. Fla. Mar. 6, 2006) (scienter sufficiently pleaded where plaintiffs alleged insider trading immediately following a positive disclosure and a motive to delay the write-down because it would have either delayed an IPO or resulted in a lower offering price).

3.      **Plaintiffs' Remaining Theories of Scienter do not Support Their Claim.**

In a fruitless attempt to stave off dismissal, plaintiffs repeat their random assortment of scienter theories without acknowledging (much less refuting) defendants' showing that each theory fails as a matter of law. Opp. at 24-26.

*The "Magnitude" Theory*. Plaintiffs do not dispute that allegations concerning the magnitude of an impairment charge only suffice where they are coupled with other sufficient allegations of scienter. *See* MTD at 25-26. But then plaintiffs continue to argue only that the "magnitude of the June 8, 2017 impairment charge was stunning." Opp. at 24-25. And, supporting defendants' point, the cases plaintiffs rely upon all include particularized allegations of scienter beyond the magnitude of the impairment. *See Dudley,* 2013 WL 1845519, at *12, *17; *In re Vivendi Universal, S.A. Sec. Litig.*, 381 F. Supp. 2d 158, 176 (S.D.N.Y. 2003) (defendants failed to take an impairment charge, despite internal memoranda showing the need for the charge).

*The "Core Operations" Theory*. Plaintiffs ignore entirely that allegations involving a company's "core operations" require allegations of "specific information conveyed to management and related to fraud" (*Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 (3d Cir. 2013))—allegations that are entirely absent here (*see* MTD at 25).

*The "Internal Reporting" Theory*. Plaintiffs do not even attempt to support their counter-intuitive notion that because a company has good corporate governance and management a court can somehow presume knowledge of the alleged fraud. *See* MTD at 24. Plaintiffs also do not

dispute that the complaint fails to allege any specific information conveyed to management that supposedly contradicted Ascena's goodwill reporting. *See* MTD at 24-25.[11]

The *"Sophisticated Defendant" Theory*. Backpedaling, plaintiffs make a single, throw-away reference to their theory that defendants acted with scienter because they were "highly sophisticated financial professionals" who attended elite schools (*see* AC ¶ 130, Opp. at 3), but do not seriously contend that attending good schools and being smart supports an inference of fraud (*see* MTD at 25).

The *"I have a Family" Theory*. As defendants established, a CEO's desire for the company to succeed is a motive that is "generally possessed by most corporate directors and officers" and does not suffice to establish scienter. *See* MTD at 27. Plaintiffs have no response. Their allegations fail to ascribe any motive to Mr. Jaffe, Mr. Giammatteo, or any other individual at Ascena.

### C.     Plaintiffs Fail to Plead Loss Causation

To survive this motion, plaintiffs must plead "a causal connection between the material misrepresentation and the loss." *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 424 (3d Cir. 2007). Plaintiffs have no answer to defendants' showing that Ascena's stock price already reflected any need for an impairment charge. MTD at 28-30. Instead, plaintiffs claim that Ascena's basis for dismissal is too "fact-intensive" to be decided at this stage. Opp. at 26-27. Plaintiffs are wrong.

The Second Circuit addressed this precise issue on appeal from a motion to dismiss in *CBS*. *See CBS*, 679 F.3d at 69. There, the Second Circuit affirmed the dismissal of a complaint for failure to plead reliance on a fraudulently inflated stock price where, as here, all impairment indicators "were matters of public knowledge" and the stock traded in an "efficient" market. *Id.*

---

[11] Plaintiffs have abandoned the argument that because Ascena hired a consulting firm (Accenture) to improve its business operations, Ascena must have known about adverse information contradicting its goodwill reporting. *See* AC ¶¶ 128-29.

Plaintiffs have no rejoinder to *CBS*. Plaintiffs do not dispute that because all of the "red flags" triggering the need for impairment were public, plaintiffs cannot establish loss causation under *CBS*. Instead, plaintiffs baldly assert that the May 17, 2017 press release must have disclosed "new" corrective information simply because the stock price dropped following the statement. Opp. at 27. But this does not respond to *CBS*, in which the stock price also dropped after an announcement of a goodwill impairment test. *City of Omaha, Neb. Civilian Emps.' Ret. Sys. v. CBS Corp.*, 2010 WL 1029290, at *3 (S.D.N.Y. Mar. 16, 2010), *aff'd*, 679 F.3d 64 (2d Cir. 2012). Moreover, plaintiffs' cited cases are distinguishable because the corrective disclosures in those cases announced *new* information, more than the decision to conduct interim testing. *See De Vito*, 2018 WL 6891832, at *11 (announcement of previously-undisclosed liquidity issues); *Omanoff*, 2015 WL 1472566, at *6 (announcement of audit that revealed "unexplained issues"); *In re Bradley Pharm., Inc. Sec. Litig.*, 421 F. Supp. 2d 822, 827 (D.N.J. 2006) (announcement of SEC investigation).[12]

Finally, plaintiffs mischaracterize *Zwick* in claiming that defendants' argument is too "fact-specific" to decide "at this stage." Opp. at 27. Plaintiffs assert that the Court there "*reject[ed]* [the] argument that information relevant to [the] goodwill impairment charge was sufficiently disclosed to the market." *Id.* But, in fact, the Court only stated, it "cannot conclude, at this time, that the information known publicly to the investors dispelled the false impressions created by Defendants'

---

[12] Plaintiffs also try to argue that *CBS* is inapplicable by asserting, in a single footnote, that *CBS* "addressed the reliance element" and involved "concessions at oral argument not made here." Opp. at 28 n.24. Both points are unavailing. First, plaintiffs do not show why the Court's reasoning related to reliance should not also apply to loss causation. In fact, "'[l]oss causation is a more exacting standard' than [reliance]." *McCabe*, 494 F.3d at 430. Second, plaintiffs at oral argument in *CBS* admitted exactly what plaintiffs concede in this case—that "all of the information alleged to constitute 'red flags' calling for interim impairment testing…were matters of public knowledge." *CBS*, 679 F.3d at 69; Opp. at 7.

alleged misrepresentations." *Zwick*, 2018 WL 2933406, at *10. Further, unlike here, *Zwick* was not just a goodwill impairment case. Defendants there allegedly decided "to spin-off 38 of its worst hospitals into Quorum in order to improve its performance and generate cash to pay down its huge debt," and waited until after the spin-off to write down goodwill "to make Quorum look more appealing to investors." *Id.* at *6. By contrast, where "the asserted basis for plaintiffs' securities fraud claims is quite limited"—as is the case here—it is perfectly appropriate for a Court to find on a motion to dismiss that a company's "market price would at all pertinent times have reflected the need for, if any, or culpable failure to undertake, if any, interim impairment testing." *CBS,* 679 F.3d at 66, 69.

Here, during the class period, the market was not only aware of the deteriorating conditions that prompted impairment but also defendants' supposed "ignoring" of these "warning signs." Plaintiffs have failed to sufficiently allege a causal connection between the supposed fraud, their purported loss, and the May 17, 2017 disclosure.

### D.    The Claims Against the Individual Defendants Should be Dismissed

The Third Circuit has made clear that "[t]he PSLRA requires plaintiffs to specify the role of each defendant, demonstrating each defendant's involvement in misstatements and omissions." *Winer Family Tr. v. Queen*, 503 F.3d 319, 335-36 (3d Cir. 2007). Where "[p]laintiff's allegations rest on circumstantial evidence of each defendant's intent," as they do here, "such allegations must be supported by detailing, with particularity, 'the who, what, when, where and how' of the events at issue and by presenting clear facts verifying [p]laintiff's deductions with respect to each defendant's state of mind." *Monk v. Johnson & Johnson*, 2011 WL 6339824, at *10-11 (D.N.J. Dec. 19, 2011). As discussed above, plaintiffs do not even attempt to meet this standard, failing to plead *any* facts, much less particularized ones, demonstrating Mr. Jaffe's or Mr. Giammatteo's state of mind and their role in the supposed fraud. Plaintiffs' claim against the Individual

16

Defendants should be dismissed. *See Monk*, 2011 WL 6339824, at \*10-11 (dismissing allegations against individual defendant who made challenged statements on earnings calls because plaintiffs failed to allege he made those statements knowingly or recklessly with particularity).[13]

### Conclusion

The Court should grant Ascena's Motion to Dismiss with prejudice. *See In re NAHC*, 306 F.3d at 1332 (upholding district court's denial of leave to amend because amendment would be futile, in part because the claim was time-barred).

Dated: July 3, 2020
　　　 New York, NY

Respectfully submitted,

Joseph S. Allerhand
Caroline Hickey Zalka
Lauren W. Engelmyer
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153
(212) 310-8000

*Attorneys for Defendants Ascena Retail Group, Inc., David Jaffe, and Robert Giammatteo*

---

[13] As plaintiffs have failed to plead a primary violation of Section 10(b), plaintiffs' control person claim under Section 20(a) of the Exchange Act also fails. *Rahman*, 736 F.3d at 247.