**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re ASCENA RETAIL GROUP, INC. SECURITIES LITIGATION | ) No. 2:19-cv-13529-KM-JBC |
| | ) |
| | ) CLASS ACTION |
| | ) |
| This Document Relates To: | ) |
| | ) |
| ALL ACTIONS. | ) |
| | ) |
| | ) |

**LEAD PLAINTIFFS' SUPPLEMENTAL MEMORANDUM OF LAW IN FURTHER OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ...................................................................................1

ARGUMENT ...........................................................................................................4

I.      THE COMPLAINT STATES CLAIMS UNDER SECTION 10(b) ..................................4

      A.      Defendants' False and Misleading Statements ..........................................4

      B.      Defendants Acted with Scienter..............................................................7

      C.      Leave to Amend the Complaint ...............................................................10

CONCLUSION.........................................................................................................10

## TABLE OF AUTHORITIES

**Page**

**CASES**

*Bauer v. Prudential Fin., Inc.*,
Nos. 09-1120(JLL), 09-1771(JLL), 2010 WL 2710443
(D.N.J. June 29, 2010) ...................................................................................................9

*Camelot Event Driven Fund v. Alta Mesa Res., Inc.*,
No. 4:19-cv-957, 2021 WL 1416025
(S.D. Tex. Apr. 14, 2021) ..............................................................................................8

*Curran v. Freshpet, Inc.*,
No. 16-2663, 2018 WL 394878
(D.N.J. Jan. 12, 2018) ....................................................................................................7

*Dudley v. Haub*,
No. 2:11-cv-05196 (WJM), 2013 WL 1845519
(D.N.J. Apr. 30, 2013) ................................................................................................3, 9

*Fergus v. Immunomedics, Inc.*,
No. 16-cv-3335 (KSH) (CLW), 2020 WL 2832565
(D.N.J. June 1, 2020) .....................................................................................................7

*Fryman v. Atlas Fin. Holdings, Inc.*,
No. 18-cv-01640, 2022 WL 1136577
(N.D. Ill. Apr. 18, 2022) ................................................................................................6

*Hedick v. Kraft-Heinz Co.*,
No. 19-cv-1339, 2021 WL 3566602
(N.D. Ill. Aug. 11, 2021)....................................................................................2, 3, 5, 8

*In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*,
324 F. Supp. 2d 474 (S.D.N.Y. 2004)............................................................................6

*In re EQT Corp. Sec. Litig.*,
504 F. Supp. 3d 474 (W.D. Pa. 2020).............................................................................6

*In re Scottish Re Grp. Sec. Litig.*,
524 F. Supp. 2d 370 (S.D.N.Y. 2007).............................................................................6

*In re Vivendi Universal, S.A.*,
381 F. Supp. 2d 158 (S.D.N.Y. 2003).............................................................................9

**Page**

*Ortiz v. Canopy Growth Corp.*,
    537 F. Supp. 3d 621 (D.N.J. 2021) ....................................................................9, 10

*Strougo v. Tivity Health, Inc.*,
    551 F. Supp. 3d 839 (M.D. Tenn. 2021)...........................................................5, 8, 9

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §78j(b) ........................................................................................................................2

In accordance with the Court's Order dated April 5, 2022 (ECF No. 63), Lead Plaintiffs respectfully submit this Supplemental Memorandum of Law in Further Opposition to Defendants' Motion to Dismiss (ECF No. 47).  Lead Plaintiffs fully incorporate herein their Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Opposition Brief") (ECF. No. 49).[1]

## PRELIMINARY STATEMENT

This action arises from Defendants' fraudulent overstatement and subsequent sudden write-down of over $1.3 billion in the value of Ascena and, in particular, the goodwill and brand value of its subsidiary, ANN.  The Complaint alleges that Defendants ascribed exorbitant values to these ANN assets, falsely reassuring investors that ANN's business remained strong despite its worsening condition and culminating in a write-down that slashed almost a quarter of the value from the Company's balance sheet overnight.

The Complaint is more than sufficient to state claims against Defendants Jaffe and Giammatteo, the two senior-most executives responsible for every material misrepresentation alleged in this case.  Lead Plaintiffs' Opposition Brief already demonstrated that Defendants' motion to dismiss fails, because: (i) the Complaint pleads material misrepresentations in the form of a $1 billion asset overvaluation coupled with allegations of contemporaneous facts and circumstances concerning each relevant financial quarter indicating that ANN's goodwill and brand value were materially impaired well before Defendants acknowledged it; and (ii) the

---

[1]     Citations to "¶" or "¶¶" herein refer to the paragraphs of the Consolidated Amended Complaint for Violations of the Federal Securities Laws (ECF No. 42) (the "Complaint"). References to "Def. Supp. Mem." are to the Defendants' Supplemental Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiffs' Consolidated Amended Complaint (ECF No. 68).  References to "Opp. Br." are to Lead Plaintiffs' Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF No. 49).  Capitalized terms used but not defined herein have the same meaning as in the Complaint.  All internal citations and quotation marks are omitted and all emphasis is added unless otherwise noted.

Complaint raises a strong inference of scienter based on particularized allegations concerning, *inter alia*, Defendants' knowledge and understanding of the facts and circumstances underlying the impairment, the magnitude and significance of the overstatement and consequent write-down, one Defendant's personal motivations, and an admission that the impairment was not caused by new developments but by a "significant change in the market environment we've seen over the past couple of years." ¶¶ 6, 55, 120, 125.

Defendants' supplemental briefing does not salvage their motion and instead reiterates their unavailing arguments while failing to deal with the allegations of the Complaint. Defendants continue to decry so-called "fraud by hindsight" and argue that their asset valuations are mere "opinions," while evading the Complaint's allegations of contemporaneous impairment indicators, such as the significant deterioration of multiple key metrics underlying the Company's asset valuations and critical long-term shifts in consumer behavior. Defendants also regurgitate their scienter argument, attempting to critique the allegations of scienter piecemeal instead of collectively (as required), all while ignoring the detailed allegations of red flags, access to sophisticated internal reporting systems, and Defendants' own acknowledgement that the facts underlying the Company's write-down had been evident to them for years.

Defendants' supplemental briefing also fails to address highly relevant recent decisions supporting Lead Plaintiffs' claims. For example, Defendants make no mention of *Hedick v. Kraft-Heinz Co.*, in which a district court denied a motion to dismiss Section 10(b) claims alleging – just as in this case – a material overstatement and subsequent write-down of goodwill and intangible assets. No. 19-cv-1339, 2021 WL 3566602 (N.D. Ill. Aug. 11, 2021). As the court there explained, "[t]he magnitude of [the] write-down of goodwill and intangible assets . . . supports an inference that the impairment was not a sudden, unexpected event, but rather the result of ongoing problems

- 2 -

at the Company, about which it is unlikely that Defendants were absolutely ignorant." *Id.* at *13. *Hedick* thus echoes and reinforces the holding in this district that "[g]oodwill does not go from being unimpaired to fully impaired overnight." *Dudley v. Haub*, No. 2:11-cv-05196 (WJM), 2013 WL 1845519, at *12 (D.N.J. Apr. 30, 2013). The facts here support the same conclusion.

*Hedick* also rejected the same "opinion" arguments that Defendants advance here, finding with respect to the defendants' "impairment disclosures" that – just as in this case – the "complaint alleges several . . . triggering event[s] that should have alerted Defendants to the likelihood of impairment" and that "whether these were in fact triggering events is not a question for the motion to dismiss stage." 2021 WL 3566602, at *9. *Hedick* also involved a strikingly similar admission to Defendants' statement here that the write-down was prompted by market developments they had observed for years. Just as Defendants here admitted that the impairment "charge represents a significant change in the market environment we've seen over the past couple of years," in *Hedick*, a successor CEO "arguably admitted" scienter "when he stated that the Company's . . . 'losses have been increasing, actually, double digits *in the last years*.'" *Compare* ¶¶ 6, 55, 120, 125 *with* 2021 WL 3566602, at *13 (emphasis in original). Defendants do not bring this and other recent authority to the Court's attention.

Defendants' supplemental submission also places undue emphasis on the fact that the Complaint does not set forth confidential witness allegations. In that regard, Lead Plaintiffs respectfully inform the Court that since filing the Complaint, Lead Plaintiffs have identified confidential witnesses lending further support to the claims in this case. The current operative Complaint stands on its own terms and the Court should deny Defendants' motion to dismiss. Nevertheless, should the Court disagree and grant leave to amend, Lead Plaintiffs would include new allegations from confidential witnesses in any such amended pleading.

- 3 -

For these reasons, as well as those stated in the Complaint and Opposition Brief, Lead Plaintiffs respectfully ask the Court to deny Defendants' motion.

## ARGUMENT

### I.   THE COMPLAINT STATES CLAIMS UNDER SECTION 10(b)

#### A.   Defendants' False and Misleading Statements

The Complaint is more than sufficient to plead material misrepresentations.  As Lead Plaintiffs' Opposition Brief demonstrated, the Complaint alleges that Defendants overstated the value of ANN by approximately $1 billion, failing to take any impairment despite the manifold contemporaneous circumstances detailed in the Complaint showing that ANN's goodwill and intangible assets were impaired well before Defendants disclosed their write-down.

Defendants' supplemental brief nevertheless repeats their mistaken assertion that the Complaint somehow fails to allege any false statements, arguing that their $1 billion asset inflation is protected from liability either as a statement of "opinion" or otherwise as "fraud by hindsight." *See* Def. Supp. Mem. at 5.  These arguments mischaracterize and ignore the allegations of the Complaint, which includes a detailed pleading concerning multiple triggering events that indicated ANN's asset impairment during the Class Period, including: (i) the significant decline and deterioration in the performance of the business (including as measured by several key performance metrics), *see, e.g.*, ¶¶51-55, 62, 68, 73-76, 89-93, 104-06, 112-20; Opp. Br. at 7-9, 14; (ii) the material deterioration in Company's operating and competitive environment, *see, e.g.*, ¶¶51, 68, 89, 90, 105-106, 114, 116; Opp. Br. at 9-10; (iii) changes in consumer behavior and in ANN's commercial strategy, *see, e.g.*, ¶¶33-34, 51, 52, 87, 93, 106; Opp. Br. at 9-10; and (iv) a sustained decline in Ascena's share price, *see, e.g.*, ¶¶9, 54, 114; Opp. Br. at 10-11, 17, 19, 22.

- 4 -

The recent decision in *Strougo v. Tivity Health, Inc.* is on point. *See* 551 F. Supp. 3d 839 (M.D. Tenn. 2021) ("*Tivity*"). Like this case, *Tivity* involved allegations that the defendants "failed to impair and write down both the goodwill and . . . trade name" of an acquired subsidiary, leading to a belated "charge that reduced the value of the [associated] goodwill." *Id.* at 845, 849. The court held that the plaintiffs had sufficiently pled misstatements based on "multiple triggering events" alleged in that case, including: (i) "a sustained . . . decrease in Tivity's share price and . . . market capitalization;" (ii) "sustained underperformance" in the relevant business segment, including year-over-year revenue declines; and (iii) lowered guidance concerning the relevant business segment. *Id.* at 850-51. Based on these triggering events, the court concluded that "at the motion to dismiss stage, Plaintiffs have sufficiently alleged, given the underlying 'red flags,' objective misstatements leading to a goodwill impairment." *Id.* at 850. The same reasoning applies in this case, where the Complaint includes significantly more detailed allegations than in *Tivity* concerning impairment indicators that Defendants ignored. *See, e.g.*, ¶¶9, 33-34, 51-55, 62, 68, 73-76, 87, 89-93, 104-06, 112-20; Opp. Br. at 7-11, 14, 17, 19, 22.

Along similar lines, and as already noted, the recent decision in *Hedick* rejected the same "opinion" arguments Defendants advance here based on similar allegations concerning the existence of impairment triggering events. 2021 WL 3566602, at *8-*9. The defendants in *Hedick*, like Defendants here, argued that statements regarding asset impairments were "non-actionable opinions under *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015)." 2021 WL 3566602, at *8. The court rejected this argument, holding (as in *Tivity*) that because the complaint alleged "several" triggering events, "[w]hether these were in fact triggering events is not a question for the motion to dismiss stage." *Id.* at *9.

Defendants' "fraud by hindsight" argument is equally unavailing. "[F]raud by hindsight" exists when plaintiffs "merely claim that . . . statements turned out to be wrong, and therefore must have been fraudulent." *In re EQT Corp. Sec. Litig.*, 504 F. Supp. 3d 474, 500 (W.D. Pa. 2020); *see also Fryman v. Atlas Fin. Holdings, Inc.,* No. 18-cv-01640, 2022 WL 1136577, at *19 (N.D. Ill. Apr. 18, 2022) (rejecting fraud by hindsight argument because "this is not a case where [h]indsight is the *only* basis of the proposed inference of fraud"). Again, the pleading of falsity in this case does not rely exclusively (or even predominantly) on Defendants' ultimate write-down, but *inter alia*, on detailed allegations of contemporaneous facts and circumstances showing that Defendants materially misrepresented the value of the Company's ANN assets during the Class Period. *See, e.g.*, ¶¶56-113; Opp. Br. at 11-14, 16-20; *see also, e.g.*, *In re Atlas Air Worldwide Holdings, Inc. Sec. Litig.*, 324 F. Supp. 2d 474, 491, 494 (S.D.N.Y. 2004) (allegation regarding failure to timely recognize impairment not fraud by hindsight because plaintiffs alleged contemporaneous impairment indicators including poor market conditions, loss of customers and lack of demand); *In re Scottish Re Grp. Sec. Litig.*, 524 F. Supp. 2d 370, 394 (S.D.N.Y. 2007) ("This is not a case where plaintiffs are pleading fraud based on changed circumstances that were unforeseen by defendants at the time they made their statements. Rather, plaintiffs have cited contemporaneous circumstances . . . of which [the defendants] were aware, and which made their failure to take an earlier valuation allowance tantamount to [fraud.]"). Defendants ignored these impairment indicators at the time and their arguments now ignore the Complaint's allegations concerning the same underlying facts showing that ANN was impaired well before Defendants disclosed it.

## B.     Defendants Acted with Scienter

The Complaint likewise contains detailed allegations supporting a strong inference of scienter.  These allegations include Defendants' undisputed awareness of multiple specific and increasing impairment indicators throughout the Class Period, the existence within the Company of sophisticated internal reporting mechanisms giving Defendants access to information contrary to their disclosures, and Defendants' knowledge and experience as financial professionals, which enabled them to understand the significance of information contrary to their disclosures.  *See, e.g.*, ¶¶6, 20, 123-131; Opp. Br. at 2-3, 6-11, 21-26.  The Complaint further supports scienter based on the fact that ANN was a core aspect of the Company's business (representing approximately one third of total annual sales) and that the sheer magnitude of the impairment (which eliminated nearly a quarter of the Company's balance sheet) is impossible to square with Defendants' asserted ignorance.  *See* ¶¶131-32; Opp. Br. at 3, 16-17, 24-25.  The Complaint also alleges that Defendant Jaffe had unique additional personal motivations to conceal the disaster that his leadership caused to the business his parents founded.  *See* ¶133; Opp. Br. at 3, 26.  Read together, as they must be, these allegations are more than sufficient to raise the required strong inference of scienter.  *See, e.g.*, *Fergus v. Immunomedics, Inc.*, No. 16-cv-3335 (KSH) (CLW), 2020 WL 2832565, at *5 (D.N.J. June 1, 2020) ("The inquiry is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."); *see also Curran v. Freshpet, Inc.*, No. 16-2663, 2018 WL 394878, at *6 (D.N.J. Jan. 12, 2018) ("[T]he proper inquiry is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter.").

But this case does not require the Court to draw inferences about scienter because Defendants' own words admit it.  As alleged in the Complaint, upon announcing the details of the

- 7 -

Company's $1.3 billion write-down on the June 8, 2017 conference call, Defendant Giammatteo stated that the impairment "charge represents a significant change in the market *we've seen over the past couple of years*."  ¶¶6, 55, 120, 125.  Defendants' effort to walk away from this clear admission is unconvincing – indeed, their supplemental brief itself concedes the underlying impairment, describing this statement as an acknowledgment by Defendants that "Ascena was operating in a challenging retail environment that *notably worsened over the course of the period*."  Def. Supp. Mem. at 7.  In *Hedick*, the court found that defendants had "arguably admitted" scienter when the Company's next CEO stated that "supply chain losses have been increasing, actually, double digits *in the last years*."  2021 WL 3566602, at *13 (emphasis in original).  Defendants' scienter is even clearer in this case, which involves an admission not by a successor executive, but by Defendant Giammatteo speaking personally on an earnings call with Defendant Jaffe.

The scienter allegations here are also stronger than in *Tivity*.  In *Tivity*, the court found a strong inference of scienter concerning the goodwill impairment based *only* on the presence of "alleged goodwill impairment triggers[.]"  551 F. Supp. 3d at 852.  In contrast, this case involves extensive allegations concerning impairment triggers *as well* as a major admission by one Defendant, a strong personal motive to mislead by the other, and a write-down large enough to infer scienter from its magnitude alone.  *See, e.g.*, *Hedick*, 2021 WL 3566602, at *13 ("The magnitude of . . . write-down of goodwill and intangible assets . . . supports an inference that the impairment was not a sudden, unexpected event, but rather the result of ongoing problems at the Company, about which it is unlikely that Defendants were absolutely ignorant.") (collecting cases); *see also Camelot Event Driven Fund v. Alta Mesa Res., Inc.*, No. 4:19-cv-957, 2021 WL 1416025, at *11 (S.D. Tex. Apr. 14, 2021) ("Under the circumstances, the enormity of the write-

down over such a short period of time is enough for the case against these defendants to proceed."); *In re Vivendi Universal, S.A.*, 381 F. Supp. 2d 158, 176-77 (S.D.N.Y. 2003) (magnitude of a sudden goodwill impairment "support[ed] a reasonable belief that . . . impairments of goodwill should have been reported, but were not").

Ultimately, the inference of scienter here is far more compelling than any alternative inference that Defendants might offer. *See, e.g.*, *Ortiz v. Canopy Growth Corp.*, 537 F. Supp. 3d 621, 673 (D.N.J. 2021) (the inference "must be cogent and at least as compelling as any opposing inference of nonfraudulent intent"). Indeed, Defendants hardly attempt to suggest a credible alternative inference, and what they do propose – their strained argument that there was no scienter because Defendants disclosed public financials and warned investors that there might be an impairment (Def. Supp. Mem. at 8) – is implausible and has been rejected in other cases. *See, e.g.*, *Tivity*, 551 F. Supp. 3d at 851 (rejecting as "unpersuasive" defendants' argument "that there is no strong inference of scienter where a company actually discloses the possibility of an impairment"); *Dudley*, 2013 WL 1845519, at *13 ("[T]he fact that [defendant] issued warnings that an impairment charge might be taken in the future did not relieve the Company from recording the impairment at the appropriate time."); *Bauer v. Prudential Fin., Inc.*, Nos. 09-1120 (JLL), 09-1771(JLL), 2010 WL 2710443, at *11 (D.N.J. June 29, 2010) ("warnings do not insulate Defendants from allegations that assets were already impaired, which Plaintiff clearly alleges"). Defendants resort to nitpicking the allegations – arguing for example that the Complaint does not identify the precise moment when ANN's impairment should have been recognized – but these arguments do little to overcome the strong inference of scienter present here. *See, e.g.*, *Ortiz*, 537 F. Supp. 3d at 640 ("The inference that the defendant acted with scienter need not be irrefutable, *i.e.*, of the 'smoking-gun' genre, or even the most plausible of competing inferences.").

- 9 -

### C.      Leave to Amend the Complaint

Lead Plaintiffs respectfully submit that the Court should sustain the allegations of the Complaint and deny Defendants' motion to dismiss.  If the Court nevertheless determines to grant the motion, Lead Plaintiffs respectfully request that the dismissal be without prejudice and ask the Court's leave to amend the complaint.  *See, e.g., Ortiz*, 537 F. Supp. 3d at 134 (dismissing securities class action without prejudice and with leave to file a second amended complaint).

In that regard, Lead Plaintiffs have continued to investigate the allegations of this case since the Complaint was filed (including during the lengthy stay related to Ascena's bankruptcy) and, should the Court conclude that a second amended complaint is appropriate here, Lead Plaintiffs would anticipate including new allegations from confidential witnesses identified through the course of that investigation.  Specifically, witnesses have provided information detailing that management monitored the ongoing impairment at its underperforming stores, and that the Company had robust electronic systems in place enabling senior management to monitor and analyze the Company's operational data.  Although Lead Plaintiffs believe that the Complaint is more than sufficient to state the claims it pleads, Lead Plaintiffs look forward to including these and other allegations in a further amended complaint if the Court so orders.

### CONCLUSION

For these reasons, and the reasons set forth in Lead Plaintiff's previous briefing, Lead Plaintiffs respectfully submit that Defendants' motion to dismiss should be denied in its entirety.

DATED: May 3, 2022                                          Respectfully submitted,

                                         */s/ Christopher A. Seeger*
                                         CHRISTOPHER A. SEEGER

- 10 -

CHRISTOPHER A. SEEGER
DAVID R. BUCHANAN
CHRISTOPHER L. AYERS
SEEGER WEISS LLP
55 Challenger Road, 6th Floor
Ridgefield Park, NJ 07660
Telephone: 973/639-9100
973/584-9393 (fax)
cseeger@seegerweiss.com
dbuchanan@seegerweiss.com
cayers@seegerweiss.com

*Liaison Counsel*

POMERANTZ LLP
JEREMY A. LIEBERMAN
MURIELLE J. STEVEN WALSH
600 Third Avenue
New York, NY 10016
Telephone: 212/661-1100
917/463-1044 (fax)
jalieberman@pomlaw.com
mjsteven@pomlaw.com
egottlieb@pomlaw.com

POMERANTZ LLP
PATRICK V. DAHLSTROM
10 South LaSalle Street, Suite 3505
Chicago, IL 60603
Telephone: 312/377-1181
312/229-8811 (fax)
pdahlstrom@pomlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
VICKI M. DIAMOND
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367/1173 (fax)
srudman@rgrdlaw.com
vdiamond@rgrdlaw.com

- 11 -

ROBBINS GELLER RUDMAN
  & DOWD LLP
NOAM MANDEL
420 Lexington Avenue, Suite 1832
New York, NY 10170
Telephone: 212/693-1058
212/693-7423 (fax)
noam@rgrdlaw.com

*Lead Counsel for Lead Plaintiffs*

JOHNSON FISTEL, LLP
MICHAEL I. FISTEL, JR.
40 Powder Springs Street
Marietta, GA 30064
Telephone: 770/200-3104
770/200-3101(fax)
michaelf@johnsonfistel.com

*Additional Counsel for Lead Plaintiff*
*Joel Patterson*

BRONSTEIN, GEWIRTZ &
  GROSSMAN, LLC
PERETZ BRONSTEIN
60 East 42nd Street, Suite 4600
New York, NY 10165
Telephone: 212/697-6484
212/697-7296 (fax)
peretz@bgandg.com

*Additional Counsel for Lead Plaintiff*
*Michaella Corporation*

- 12 -

## CERTIFICATE OF SERVICE

I, CHRISTOPHER A. SEEGER hereby certify that on May 3, 2022, I authorized a true and correct copy of the foregoing document to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such public filing to all counsel registered to receive such notice.

*/s/ Christopher A. Seeger*
CHRISTOPHER A. SEEGER